UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JATIEK SMITH,

                    Plaintiff,                    14 Civ. 5927

          -against-                                OPINION

CITY OF NEW YORK; COMMISSIONER OF CITY
OF NEW YORK; COMMISSIONER OF DEPARTMENT
OF CORRECTION JOSEPH PONTE; WARDEN OF
O.B.C.C. LISA COOPER, C.O. LEWIS, and
C.O. GIST,

                    Defendants.

------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-16-17

A P P E A R A N C E S:

          Pro Se

          JATIEK SMITH
          541-14-00171
          Cape Vincent C.F.
          Route 12E
          P.O. Box 739
          Cape Vincent, NY 13518

          Attorneys for Defendants

          ZACHARY W. CARTER
          Corporation Counsel of The City Of New York
          100 Church Street
          New York, NY 10007
          By: Katherine A. Byrns, Esq.

**Sweet, D.J.**

The defendants the City of New York (the "City"),
Commissioner of the New York City Department of Correction
Joseph Ponte (the "Commissioner"), Warden of the Otis Bantum
Correctional Center (the "OBCC") on Rikers Island Lisa Cooper
(the "Warden"), Correction Officer Lewis ("Lewis"), and
Correction Officer Gist ("Gist") (collectively, the
"Defendants") have moved for summary judgment pursuant to Rule
56, Fed. R. Civ. P., to dismiss the Complaint of the pro se
plaintiff Jatiek Smith ("Smith" or the "Plaintiff"). Upon the
facts and conclusions set forth below, the motion of the
Defendants is granted, and the Complaint is dismissed.

**I.   Prior Proceedings**

The Plaintiff filed his Complaint on July 25, 2014
alleging that the Defendants violated his First Amendment rights
by retaliating against him for lodging grievances against Gist
and Lewis while housed at the OBCC. Discovery proceeded, and the
instant motion was filed on August 12, 2016 and marked fully
submitted on November 21, 2016.

1

## II.   The Facts

The facts have been set forth in the Defendants'
Statement pursuant to Local Rule 56.1 and the affidavit of the
Plaintiff. They are not in dispute except as noted below.

On March 28, 2014, a "regular facility search" was
being conducted in Plaintiff's housing area in the OBCC. The
Plaintiff claims that, during the search, he witnessed Lewis
"taking [his] personal property and throwing it into a garbage
bag." Upon observing his items being thrown out, Plaintiff
"became irate." The search team then escorted Plaintiff out of
his housing area and to the intake area.

The Plaintiff claims that, in the intake area, he met
with non-party Assistant Deputy Warden Brooks ("Warden Brooks")
and an unknown officer and that while in the intake area he had
a "two to three minute[]" conversation with Warden Brooks during
which an unidentified officer was present. The Plaintiff alleges
that during that conversation, he complained of Lewis' conduct
during the search of his housing area and cell. After the
Plaintiff "explained everything to her," the Plaintiff states
that Warden Brooks directed the unidentified officer to escort

him back to his housing area and that when he returned to his housing area, he noticed that his food and bed linens were missing.

The Plaintiff did not see Lewis take his food or linens and does not know who took his food or linens. Other inmates told Plaintiff that non-party Officer Wilma took his linens. The Plaintiff believes that Lewis took his food and linens in retaliation for his Complaints about her.

Plaintiff also claims that, on an unspecified date, he "got into it with Officer Gist" and that an unspecified time after that, Plaintiff "wrote a Complaint [about Gist] and put it in the Warden's box." Gist does not pick up grievances from the Warden's box. Plaintiff surmises that "one of the officers who pick[s] up the grievances could have easily told [her] that [he] put [her] name on grievances."

The Plaintiff asserts that on April 14, 2014, he returned from court and attempted to make a phone call. Inmates use Personal Identification Numbers ("PINs") to make telephone calls. The Plaintiff states that he noticed that his PIN was not working. He is unsure how long his PIN did not work, but he

knows for certain that it was for fewer than five days. During this time period when his PIN was not working, the Plaintiff was still able to make telephone calls by using another inmate's PIN. The Plaintiff is unsure why his PIN was not working; all he knows is "that the PIN number was wrong" and he surmises that an officer changed his PIN and thinks that office was Gist. The Plaintiff admits that any officer can "go into intake and get the PIN number changed."

The Plaintiff also claims that on April 17, 2014, he had a visitor at OBCC and that his visitor was told that the Plaintiff was still out to court, even though he was not. After waiting, Plaintiff's visitor was eventually able to register and visit him. The Plaintiff believes that his visitor was delayed because of the grievance he filed against Gist.

Since the filing of the Complaint, Plaintiff was transferred out of New York City Department of Correction custody and into New York State Department of Corrections and Community Supervision custody, where he is currently incarcerated.

The Plaintiff alleges a pattern of disregard of the
Inmate Grievance Program, alleging that he was told he would pay
for complaining and received direct threats, that the
conclusions set forth by counsel for the Defendants are in
error, and that he has not had depositions of the Defendants
named in the Complaint.


## III.    The Applicable Standard


Summary judgment is appropriate only where "there is
no genuine issue as to any material fact and . . . the moving
party is entitled to a judgment as a matter of law." Fed. R.
Civ. P. 56(c). "[T]he substantive law will identify which facts
are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986).


A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Id.* The relevant inquiry on application for summary judgment is
"whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." *Id.* at 251-52.  A
court is not charged with weighing the evidence and determining

its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see*

*also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would be sufficient to support a jury verdict in his favor"). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Because the Plaintiff is proceeding pro se, the Court must "extend extra consideration," as "pro se parties are to be given special latitude on summary judgment motions." *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations and internal quotations omitted); *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, this Court will construe the Plaintiff's pleadings "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)). "Nevertheless, proceeding pro se does not otherwise

relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Bilal v. N.Y. State Dep't of Corr.*, No. 09 CIV. 8433 JSR AJP, 2010 WL 2506988, at *8 (S.D.N.Y. June 21, 2010), *subsequently aff'd sub nom. Bilal v. White*, 494 F. App'x 143 (2d Cir. 2012) (internal citation omitted); *Whitfield v. O'Connell*, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) ("[T]he court need not accept as true 'conclusions of law or unwarranted deductions of fact.'") (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)).

## IV. The Retaliation Claim Against Lewis is Dismissed

To survive summary judgment, a plaintiff alleging a First Amendment retaliation claim must show that: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F. 3d 489, 492 (2d. Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506 (2002), *as recognized by Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009))). Plaintiff's "claim for retaliation must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Thomas v. Goord*, 215 Fed. App'x 51, 53 (2d. Cir. 2007) (internal quotation marks and citations omitted). "Courts approach such retaliation claims 'with skepticism and particular care,' since 'virtually any adverse action taken against a prisoner by a prison official – even those not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Smith v. City of New York*, No. 03 Civ. 7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (quoting *Dawes*, 239 F.3d at 491).

      The Defendants acknowledge that the Plaintiff has shown that he engaged in constitutionally protected conduct insofar as he claims to have filed grievances against defendants Gist and Lewis. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prisoners have a right to petition for redress of grievances and that prison officials may not retaliate against prisoners who exercise this right). However, even viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff has failed to prove by "specific and

detailed factual allegations" that Lewis took adverse action

against the Plaintiff and that there was a causal connection

between the protected speech and the adverse action.

The Plaintiff has alleged that Lewis threw out the

Plaintiff's food and bed linens in retaliation for a verbal

Complaint he made about her. As a preliminary matter, the

Plaintiff has failed to prove that Lewis engaged in the conduct

he alleges, supporting his claim only with conclusory

allegations, which are insufficient to create a genuine issue of

fact on summary judgment. *See Thomas v. Goord*, 215 Fed. App'x at

53.

Plaintiff admits that he does not know who took his

food or linen. He acknowledges that he did not see Lewis take

his food. *See* Plaintiff's Aff. in Opp'n to Mot. for Summary

Judgment, November 3, 2015, ¶ 7 (stating that "he did not

actually see Lewis remove his property"). He simply claims that

"[his] linen was there when he left the housing area" and that

"when [he] came back, [he] had no linen." The only support

Plaintiff offers of his claim is his conjectural testimony that

Lewis threw out his property, urging that even though he did not

see Lewis take his property, "she was the only person by his bed

10

prior to [Plaintiff] being removed from the area" so she must have taken it. However, Plaintiff's contention is contradicted by his deposition testimony. At his deposition, the Plaintiff "officers were still at [his] bed, going through [his[ area, while [he] was out of the area"; he only now states that Lewis was the only person by his bed before Plaintiff left the housing area. The Second Circuit has held that a plaintiff cannot defeat summary judgment by simply contradicting his or her own deposition testimony. See *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.") (citations omitted).

Even if the Plaintiff had sufficiently alleged that it was Defendant Lewis who took the Plaintiff's food and bed linens, the alleged conduct does not constitute adverse action.

Adverse action is conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise,

11

the retaliatory act is simply *de minimis*, and therefore outside
the ambit of constitutional protection." *Dawes*, 239 F.3d at 492–
93 (citations omitted); *see also Davidson v. Chestnut*, 193 F.3d
144, 150-51 (2d Cir. 1999) (*de minimis* acts of retaliation do
not chill the exercise of constitutional rights, and thus are
insufficient to support a First Amendment retaliation claim);
*Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (*en
banc*) (approving similar standard on the ground that "some non-
*de minimis* showing of injury is necessary"), *vacated on other
grounds*, 523 U.S. 574 (1998)). What constitutes adverse action
is context-specific, and "[p]risoners may be required to
tolerate more than . . . average citizens, before [retaliatory]
action taken against them is considered adverse." *Smith*, 2005 WL
1026551, at *3 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394
(6th Cir. 1999), *cited with approval in Davidson*, 193 F.3d at
150.)

"[T]he confiscation or destruction of property taken
at the time of . . . searches may," but does not always,
constitute an adverse action. *Keesh v. Goord*, No. 04-CV-271,
2007 WL 2903682 at *8 (W.D.N.Y. Oct. 1, 2007); *see also, e.g.,*
*Smith v. City of N.Y.*, 03 Civ. 7576, 2005 WL 1026551 at *3
(S.D.N.Y. May 3, 2005) ("[R]etaliatory destruction of a

12

prisoner's personal property has previously been found substantial enough to qualify as an adverse action"). "[M]inor cases of withholding property are typically *de minimis.*" *Shannon v. Venettozzi*, No. 13 CIV. 4530 KBF, 2015 WL 114179, at *6 (S.D.N.Y. Jan. 8, 2015), *aff'd in part, vacated in part*, 670 F. App'x 29 (2d Cir. 2016). In *Shannon*, for example, the court dismissed the pro se plaintiff's retaliation claim against the defendant correction officer "[a]s confiscating one magazine would not deter a similarly situated individual from filing grievances and is [therefore] a de minimis action." *Id.*

That Lewis allegedly threw out the Plaintiff's food and bed linen is not a "substantial enough [injury] to deter legitimate grievances against prison officers." *Salahuddin v. Mead*, No. 95 Civ. 8581(MBM), 2002 WL 1968329, at *4 (S.D.N.Y. Aug.26, 2002); *see also Shannon*, 2015 WL 114179, at *6. Because it is not conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *Dawes*, 239 F.3d at 492-93, the Plaintiff cannot meet the adverse action prong of the First Amendment retaliation claim test. *See Fann v. Arnold*, No. 14-CV-6187-FPG, 2016 WL 2858927, at *2 (W.D.N.Y. May 16, 2016) (holding that the plaintiff's allegation of property destruction "constitute[d] a

*de minimis* act of retaliation" where the plaintiff had alleged that "all of his property was thrown in the shower"); Quezada v. Fischer, 2016 U.S. Dist. LEXIS 19157, *47, 49-50 (N.D.N.Y. Feb. 16, 2016) (holding that "putting Plaintiff's sheet, lotion, and shampoo in the garbage is not in and enough itself sufficient to constitute and adverse action."); *McFadden v. Friedman*, No. 9:12-CV-0685 GTS/CFH, 2015 WL 5603433, at *12 (N.D.N.Y. Sept. 23, 2015) (confiscation of plaintiff's fan would "not [deter] a similarly situated individual of ordinary firmness from exercising his constitutional rights," and is "not substantial enough to deter legitimate grievances against prison officers").

In addition, to establish a First Amendment claim for retaliation, the Plaintiff must present evidence showing that there was a causal connection between the protected speech and the adverse action, which he has failed to do.

In order to prove a causal connection, the Plaintiff must show that his prior filing of grievances was a "substantial or motivating factor" in Lewis's alleged confiscation of the Plaintiff's food and linens. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). In other words, for the third prong of the First

14

Amendment retaliation claim test, a plaintiff "must allege facts sufficient to support an inference that his protected conduct played a substantial part in the adverse action taken against him." *Shekhem' El-Bey v. City of N.Y.*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006) (citing Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000)).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). However, a showing of temporal proximity, without more, has been found insufficient in this context to survive summary judgment. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011); *Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment.").

Here, the Plaintiff has failed to establish a causal connection between the alleged retaliatory conduct and Plaintiff's grievance. The Plaintiff testified that while Lewis

15

purportedly searched his cell, he was escorted to the intake area and had a "two to three minute[]" conversation with Warden Brooks, during which an unidentified officer was present. The Plaintiff testified that he complained of Lewis' conduct during the search of his housing area and cell to Warden Brooks. After he "explained everything to her," Warden Brooks directed the unidentified officer to escort him back to his housing area. He claims that after this conversation, he returned to his housing area and noticed that his food and linen were missing. The alleged adverse action cannot have been a result of Plaintiff's protected conduct because these two occurrences took place too close in time to suggest retaliation.

Accepting Plaintiff's version as true, it has not been established that Lewis was aware or even could have been aware of the verbal grievances Plaintiff made to Warden Brooks and the unknown officer given the timing the Plaintiff alleges. Immediately after Plaintiff made these Complaints, Warden Brooks directed the unidentified officer to escort him to his housing area, and upon arrival, his property was already missing, allegedly taken by Lewis. As such, Plaintiff's claim against Lewis fails to establish a causal connection between his grievance and her alleged conduct. *Cagle v. Perry*, 04 CV 1151

(TJM) (GHL), 2007 U.S. Dist. LEXIS 99932, at *48 (N.D.N.Y. Sept. 19, 2007) (dismissing retaliation claim against correction officer where plaintiff failed to provide facts that defendants "had any reason to know about [p]laintiff's previous Complaint").

In his response papers, the Plaintiff presents a new theory of retaliation and contends that he filed a grievance against Gist, that Gist then told Lewis about that grievance, and that Lewis then retaliated against Plaintiff for this grievance. As with the Plaintiff's initial version of events, the Plaintiff sets forth no evidence to suggest that Lewis had any knowledge of the alleged Gist grievance, or that this grievance was made close in time to the alleged retaliation by Lewis.

As such, Plaintiff's claim against Lewis is dismissed as a matter of law in the absence of adverse action and for failure to establish causation.

17

## V.   The Retaliation Claim Against Gist is Dismissed

The Plaintiff has alleged that Gist engaged in adverse action in retaliation for his filing a grievance against her in two ways: Gist caused a visitor to be delayed on one occasion, and Gist changed the PIN which the Plaintiff used to make telephone calls. Neither of these alleged actions constitute adverse actions.

The Plaintiff states that his "visitor was told on numerous occasions that I was still out to Court. After waiting she was finally allowed to register and visit me." Plaintiff further states that he "believe[s] this is in retaliation to [his] grievances." The Plaintiff has offered no evidence that Gist was in any way responsible for or the cause of his visitor being delayed. Even assuming that Plaintiff has proven that Gist caused his visitor to be delayed on that date, her alleged conduct does not constitute adverse action. The Southern District has held that "a single denial of visitation, even if intentional and unjustified, is nevertheless unlikely to chill a person of ordinary firmness from continuing to exercise his right to file grievances." *Mateo v. Heath*, No. 11 CIV. 636 LAP, 2012 WL 1075836, at *4 (S.D.N.Y. Mar. 29, 2012) (citing *Ross v.*

18

*Westchester Cnty. Jail*, No. 10 Civ. 3937, 2012 WL 86467, at *7 (S.D.N.Y. Jan. 11, 2012)). If complete denial of a visitor on one occasion does not amount to adverse action, a delay of a visit on a single occasion does not amount to adverse action either. *See id.*

Plaintiff also alleges that Gist retaliated against him for filing a grievance against her by changing his inmate PIN, thereby preventing him from making telephone calls using his PIN. Specifically, the Plaintiff claims that on April 14, 2014, he returned from court and was unable to make a telephone call because his PIN had been changed. Plaintiff has not presented any evidence that Gist actually engaged in the conduct alleged. Rather, Plaintiff offers only speculative testimony in support of his claim, and he admits that any officer could have changed his PIN. When asked who changed his PIN, plaintiff testified, "I don't know. Any officer could go to intake and get the PIN number changed." In fact, Plaintiff has not offered any evidence that his number being changed was due to the conduct of any officer, as opposed to a mere systematic error. Significantly, Plaintiff acknowledged that he, in fact, has no idea how his PIN got changed; all he knows is "that the PIN number was wrong."

Not only has the Plaintiff alleged no facts showing that Gist changed the PIN, but the Southern District has held that temporary loss of telephone privileges does not constitute adverse action. *Garcia v. Watts*, 08 CV 7778 (JSR) (HP), 2009 U.S. Dist. LEXIS 85613, at *8 (S.D.N.Y. Sept. 14, 2009) ("Given that the alleged retaliatory conduct was limited to . . . a temporary, but suspended, loss of telephone privileges, it is also doubtful that the Complaint alleges facts sufficient to satisfy [the adverse action] element."). Just as in *Garcia*, the Plaintiff's use of his PIN was only temporarily delayed; although he does not recall precisely how long his PIN was not working, it was for fewer than five days. Further, Plaintiff testified that he was still able to make telephone calls during this short time period by borrowing another inmate's PIN. Plaintiff's temporary delay in making phone calls using his own PIN – even when coupled with the purported single delay in receiving a visitor – does not amount to adverse action.

The Plaintiff must also, and has failed to, establish a "causal connection" between the protected speech and the alleged adverse actions by Gist. *See Dawes*, 239 F.3d at 492.

The Plaintiff's claims that Gist retaliated against

him for filing a grievance against her are "conclusory and

almost entirely circumstantial." *Mateo*, 2012 WL 1075836, at *4.

The Plaintiff merely surmises that Gist became aware of a

grievance he dropped off in a box designated for inmate

grievances on an unspecified date.

In his papers, the Plaintiff states: "As stated in the

Complaint, all of the issues complained of therein took place

after Plaintiff . . . had an argument with Gist, which he filed

a grievance upon. Only, after these events . . . is when all of

the retaliatory events within the Complaint took place."

Additionally, the Plaintiff testified at his deposition as

follows:

> Q: So Officer Gist picks up the grievances?
>
> A: No. She does commissary. I don't know what officer picks up the grievances. But, like I said, one of the officers who pick up the grievances could have easily told them that I put their name on the grievances.
>
> Q: So you don't know for sure how Correction Officer Gist found out about these grievances?
>
> A: No. Well, I said I did one Complaint with her name. So they probably went and spoke to her. If the warden and them got it, they probably went and spoke to her and told her, like, "What happened with

this inmate?" So that's how she probably knows about it. (Dep. of Jatiek Smith, p. 101: 8-19).

These conclusory assertions are insufficient to demonstrate a causal connection between Plaintiff's grievance and the alleged retaliatory conduct. The Plaintiff has offered no evidence, alleged no facts, to support his assumption that Gist was aware of the grievance or engaged in the alleged retaliatory conduct.

The Plaintiff's retaliation claim against Gist is dismissed for lack of adverse action and lack of causation.

## VI. The Claims Against the Commissioner and the Warden Are Dismissed

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id.* (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d

Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)). Personal involvement in a Section 1983 violation may be shown by evidence that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 634, 644 (2d. Cir. 1994)).

In this case, the Complaint does not contain any factual allegations regarding either the Commissioner or the Warden's involvement in the alleged incidents, nor has Plaintiff adduced any evidence that either individual was personally involved in the alleged incidents in any of the ways set forth in *Colon*.

Plaintiff states in his opposition briefing that he "tried on numerous occasions to engage the Commissioner and the Warden with issues raised through the Inmate Grievance Program within the Department of Corrections," and that "defendant Cooper was directly informed of the retaliatory actions of her staff and chose to do nothing to correct their behavior." These assertions do not establish that the Plaintiff did, in fact, inform the Commissioner of the alleged constitutional violations.

Even assuming *arguendo* that the Commissioner and the Warden were aware of Plaintiff's Complaints, these allegations are insufficient to establish their personal involvement; "[t]he United States Supreme Court clarified that a supervisor's mere 'knowledge and acquiescence' cannot establish personal involvement under § 1983." *Faulk v. N.Y. City Dep't of Corr.*, No. 08 CIV. 01668 LGS, 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). As such, "mere Complaints made to supervisory defendants are not enough to establish supervisory liability under § 1983." *Id.* (citing *Rivera v. Goord*, 119 F.Supp.2d 327, 344-45 (S.D.N.Y. 2000)). Here, the record is devoid of any evidence to allow a reasonable jury to conclude that the Commissioner and the Warden

24

were personally involved in the alleged constitutional violations. *See id.* (dismissing the plaintiff's claims against warden defendant for lack of personal involvement where "[t]he only evidence in the record is that Plaintiff spoke to Warden Shaw several times about his grievances").

The claims against the Commissioner and the Warden are dismissed for lack of personal involvement.

## VII. The *Monell* Claim is Dismissed

As set forth above, the Defendants did not violate Plaintiff's constitutional rights, and therefore, his claim for municipal liability fails as a matter of law. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

In addition, the Plaintiff has failed to allege a §
1983 cause of action for municipal liability under *Monell v.
Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). To
sustain a cause of action against a municipality for liability
under 42 U.S.C. § 1983, a plaintiff must demonstrate that the
municipality was at fault. *Oklahoma City v. Tuttle*, 471 U.S.
808, 810 (1985); *see also Monell*, 436 U.S. at 691 (municipal
liability exists only where "action pursuant to official
municipal policy of some nature caused a constitutional tort").
The municipality's fault can be established by alleging: 1) a
formal policy, promulgated or adopted by the City, *Monell*, 436
U.S. at 690; 2) that an official with policymaking authority
took action or made a specific decision which caused the alleged
violation of constitutional rights, *Pembaur v. City of
Cincinnati*, 475 U.S. 469, 483-84 (1986); 3) the existence of an
unlawful practice by subordinate officials was so permanent or
well-settled so as to constitute a 'custom or usage' and that
the practice was so widespread as to imply the constructive
acquiescence of policymaking officials, *City of St. Louis v.
Praprotnik*, 485 U.S. 112, 127 (1988); or 4) a failure to train
or supervise that amounted to "deliberate indifference" to the
rights of those with whom the municipality's employees
interacted, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

26

A single, isolated incident of an alleged violation of constitutional rights is insufficient to support a claim for municipal liability. *See Oklahoma City*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*."); *Nunez v. City of N.Y.*, No. 14-CV-04035 WFK LB, 2014 WL 4175791, at *2 (E.D.N.Y. Aug. 20, 2014) ("A single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless a plaintiff can establish that it was caused by an existing, unconstitutional municipal policy.") (citing *Oklahoma City*). This is particularly relevant under the third theory of municipal liability - the "wide-spread unlawful practice" theory - for which a plaintiff must provide evidence of more than isolated incidents to subject the City to liability. *See Escobar v. City of New York*, 766 F. Supp. 2d 415, 420-421 (E.D.N.Y. 2011) (rejecting municipal liability based on a widespread policy theory in part because the plaintiff offered only isolated incidents as evidence); *Edwards v. City of New York*, 03-CV-9407, 2005 WL 3466009, at *11 (S.D.N.Y. Dec. 19, 2005)

("[*Monell*] would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable."); *see also Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003) ("Under *Monell*, a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees").

The Plaintiff has not set forth any allegations against the City of New York, thereby failing to state a claim for municipal liability, and further has not adduced any evidence in support of this claim and, therefore, cannot show a genuine issue of material fact regarding on the *Monell* claim.

## VIII. The Claim for Injunctive Relief is Moot

In addition to compensatory damages, the Plaintiff seeks a "preliminary and permanent injunction ordering defendants Ponte and Cooper to cease their use of the procedures listed in the facts of [his] Complaint." Complaint, p. 5. Because Plaintiff is no longer in New York City Department of Correction custody, his claims for injunctive relief are moot.

In order for a federal court to retain jurisdiction over a case, an actual controversy must exist "at all stages of review, not merely at the time the Complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (citations omitted). A case is deemed moot where the problem sought to be remedied has ceased, and where there is "no reasonable expectation that the wrong will be repeated." *Id.* (internal quotation marks and citations omitted).

"It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). The Plaintiff's claims arose while he was housed in OBCC, a New York City Department of Correction facility. However, since the filing of the Complaint, the Plaintiff has been transferred out of New York City Department of Correction custody and into New York State Department of Corrections and Community Supervision custody, where he is currently incarcerated. His transfer from OBCC to a facility outside of the New York City Department of Correction system renders his claims moot. *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. N.Y. 1976) (holding that plaintiff's request for an injunction "restraining the officials at Auburn from violating his civil

rights [was] moot" where plaintiff had been transferred from one
New York State correctional facility to another New York State
correctional facility); *Hunter v. City of New York*, No. 10-CV-
3532 (RA), 2015 U.S. Dist. LEXIS 130432 (S.D.N.Y. Sept. 28,
2015) (holding that plaintiff's request for an injunction was
moot where he was transferred from the Manhattan Detention
Complex – a city facility – to Green Haven Correctional Facility
– a state facility).

Accordingly, the Plaintiff's claim for injunctive
relief is dismissed.

## IX. Any Remaining Deprivation Without Due Process Claim is Dismissed

Although the Complaint does not clearly define the
Plaintiff's various causes of action, it could be read to assert
a claim under the Fourteenth Amendment for deprivation of
property without due process of law for Lewis' alleged conduct
in throwing out Plaintiff's food and bed linen. Even assuming
that Plaintiff did offer sufficient proof of Lewis' conduct,
such claim fails as a matter of law.

It is well-established that a claim for deprivation of
property without due process of law "cannot be brought in
federal court if the relevant state court provides an adequate
remedy for the deprivation of [the property at issue]." *Mateo v.
Bristow*, No. 12 CIV. 5052 RJS, 2013 WL 3863865, at *6 (S.D.N.Y.
July 16, 2013) (quoting *Key v. Tanoury*, No. 05 Civ. 10461(SHS),
2006 WL 3208548, at *2 (S.D.N.Y. Nov. 3, 2006)). Second Circuit
courts have consistently held that "New York State provides such
a remedy in Section 9 of the New York Court of Claims Act, which
permits an inmate . . . to pursue his claim for deprivation of
property against the State in the Court of Claims." *Tanoury*,
2006 WL 3208548, at *2 (citing N.Y. CT. CL. ACT § 9). The
Plaintiff has access to this remedy under New York State Law; as
such, he cannot state a claim for deprivation of property
pursuant to 42 U.S.C. § 1983. *See Mateo v. Bristow*, 2013 WL
3863865, at *18-19 ("[S]ection 1983[ can]not be made a vehicle
for transforming mere civil tort injuries into constitutional
injuries.") (quoting *Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir.
1988), *overruled on other grounds by Swierkiewicz v. Sorema
N.A.*, 534 U.S. 506 (2002)). Accordingly, to the extent that
Plaintiff asserts a constitutional claim for deprivation of
property, the claim is dismissed.

31

**X. Conclusion**

The Defendant's motion for summary judgment is
granted.

It is so ordered.

**New York, NY**
**May** _16_ **2017**

_Sweet_

ROBERT W. SWEET
U.S.D.J.